# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David Allen Caroon,                           Civil No. 10-895 (MJD/ SRN)

            Petitioner,

    v.                                                    **REPORT & RECOMMENDATION**

Joan Fabian, Commissioner
of Corrections,

            Respondent.

---

David Allen Caroon, MCF Inmate # 120424, Minnesota Correctional Facility – Moose Lake, 1000 Lakeshore Dr., Moose Lake, Minnesota 55767, Pro Se.

Gary W. Bjorklund, St. Louis County Attorney's Office, 100 North Fifth Avenue West, Room 501, Duluth, Minnesota 55802, for Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on the Petition of David Allen Caroon for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), Petitioner's Motion for Reconsideration (Doc. No. 11), Respondent's Motion to Dismiss (Doc. No. 12), and Petitioner's Motion to Stay and to Amend Complaint (Doc. No. 15). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).

## I.    FACTUAL AND PROCEDURAL HISTORY

Petitioner is currently serving a 240-month sentence at the Minnesota Correctional Facility - Moose Lake. On August 20, 2007, he was sentenced following a St. Louis County jury trial conviction for conspiracy to commit murder in the first degree.

## A.    Factual Background[1]

In the fall of 2005, Caroon began a relationship with a woman identified as B.K., and shortly thereafter, moved into her trailer home.   State of Minnesota v. Caroon, No. A07-2011, 2009 WL 112859, at *1 (Minn. Ct. App. Jan. 20, 2009).   The relationship eventually soured and after it ended, B.K. obtained an order for protection against Petitioner.  Petitioner later violated the order, was charged with felony violation of the order for protection and jailed in the St. Louis County Jail.  Id.

In August 2006, while in jail, Caroon approached another inmate, J.S., who was facing methamphetamine possession charges, about a murder-for-hire scheme.  (Id.)  The intended victim was B.K., Caroon's former girlfriend.    After their discussion, J.S. revealed this information to a jail supervisor, Sergeant Scott Ronning, telling him that Caroon had promised him $10,000 to kill B.K.  In addition, J.S. gave Ronning a map of B.K.'s trailer, purportedly drawn by Caroon.  Sergeant Ronning conveyed this information to Deputy Mark Steel, who met with J.S. to investigate his allegations.  J.S. agreed to wear a wire and continue discussing the murder-for-hire plot with Petitioner, although Deputy Steel disavowed any specific offers for a reduction in charges against J.S. in exchange for his assistance.  Id.

On September 14, 2006, J.S. wore a concealed wire and met with Petitioner in the common room of the jail.  During the meeting, Caroon asked J.S. whether he "remember[ed] the layout of the place."  Id.  Although J.S. replied that he remembered the layout, he asked Petitioner to draw a new picture.  While Petitioner drew a map, he discussed the layout of the trailer, informing J.S. where money, fur coats and coins could be found.  When J.S. asked what

---

[1]This Court's recitation of facts is based on the factual background provided by the Minnesota Court of Appeals in Minnesota v. Caroon, No. A07-2011, 2009 WL 112859 (Minn. Ct. App. Jan. 20, 2009).

would be the "best way" to kill B.K., Caroon suggested that he suffocate her, then loosen the gas line, cycle the furnace and "let the place fill up with gas and explode." Id. In addition, Caroon instructed J.S. to type a friendly "Dear Dave" letter purportedly from B.K., using her computer. J.S. was to use B.K.'s return address labels as a sign of authenticity and to mail the letter immediately. Id.

After the recorded conversation ended, J.S. gave Deputy Steel the second map drawn by Caroon. A few days later, J.S. gave Deputy Steel a handwritten letter Caroon had purportedly given J.S., asking him to transcribe the letter on B.K.'s computer, then mail it to Petitioner at the jail. The letter, to be signed "Love, [B.K.]" apologized for lying "to set you up," and stated, "I will always love you. I'm not going to testify against you." Id.

On October 13, 2006, Petitioner was charged with conspiracy to commit first-degree murder. Id. at *6. In a pretrial omnibus hearing that included law enforcement testimony, Petitioner moved to suppress his statements with J.S., citing his Fifth and Sixth Amendment rights, and challenged the probable cause for the conspiracy charge. (See Resp't's Mot. Dismiss at 2.) The district court judge, the Honorable Mark Munger, denied Caroon's motions. (Id.) (citing St. Louis Cty. Omnibus Order of 3/8/07.) Caroon was convicted following a jury trial in July 2007, and sentenced one month later.

**B.     Procedural Background**

Petitioner filed a direct appeal on October 19, 2007. (See State of Minnesota v. Caroon, No. A07-2011, Appellant's Br. to Minn. Ct. App., App. 1 to Resp't's Mem. Supp. Mot. Dismiss.) Along with the direct appeal, filed on Petitioner's behalf by the State Public Defender's Office, Caroon also filed a *pro se* supplemental brief. (See Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App., App. 2 to Resp't's Mem. Supp. Mot. Dismiss.) In the State Public

Defender's submission, Petitioner presented the following arguments in support of his appeal: (1) the district court committed structural error when it allegedly removed the overt act requirement from the jury's conspiracy instruction and directed the jury that the acts allegedly committed by Caroon amounted to overt acts; and (2) the court committed plain error when it failed to instruct the jury that it was required to unanimously agree on the particular overt act(s) that Petitioner committed in furtherance of the conspiracy and instead gave the jury the standard instruction that allowed it to find Petitioner guilty while potentially disagreeing about the specific overt acts proven. Caroon, 2009 WL 112859, at *1. In addition, Petitioner argued in his *pro se* submission that the prosecution committed a Brady violation by failing to disclose tacit agreements with the jailhouse informant, that statements taken from him were either coerced or taken in violation of his Sixth Amendment right to counsel, and that the government had entrapped him. (Appellant's *Pro Se* Supp'l Brief at 6-9, App. 2 to Resp't's Mem. Supp. Mot. Dismiss.)

The Minnesota Court of Appeals considered the claims raised in both briefs and affirmed Caroon's conviction in a January 20, 2009 decision. Caroon, 2009 WL 112859, at *5. On February 19, 2009, Petitioner filed a Petition for Review with the Minnesota Supreme Court, which included the State Public Defender's submission, appealing the jury instruction issues, as well as Caroon's previously-filed *pro se* supplemental brief. The Minnesota Supreme Court denied Caroon's Petition for Review on March 31, 2009. See id. (denoting denial of review in case caption); (State of Minnesota v. Caroon, No. A07-2011, Order of 3/31/09, App. 8 to Resp't's Mem. Supp. Mot. Dismiss.)

On March 22, 2010, Petitioner filed his Petition for a Writ of Habeas Courts with this Court (Petition, Doc. No. 1), accompanied by a 113-page memorandum in support of his habeas

petition, and several motions. This Court addressed those motions in a March 30, 2010 Order. (Order of 3/30/10, Doc. No. 10.) Because Petitioner's memorandum greatly exceeded the limit proscribed by Minnesota Local Rule 7.1(d), this Court ordered that it be stricken. Petitioner was granted leave to file an amended memorandum in support of his habeas petition, provided it complied with the Local Rules and offered support only for the claims presented in the Petition itself. (Id. at 4-5.) The Court granted Petitioner 30 days in which to file an amended memorandum, which he failed to do.

On May 3, 2010, Petitioner filed a document entitled "Motion to Reconsider Any and All Evidence and Motions Made to the Courts Up and At this Time," bearing the case caption of his state court case, State of Minnesota v. David Allen Caroon, but the handwritten civil docket number assigned by this Court. (Motion for Reconsideration, Doc. No. 11.) In this motion, Caroon seeks to "have any and all evidence be reconsidered by this Honorable Court." (Id.)

Respondent filed its Motion to Dismiss the Petition for Writ of Habeas Corpus on May 27, 2010. (Resp't's Mot. Dismiss, Doc. No. 12.) In its Motion to Dismiss, Respondent argues that Caroon's habeas petition should be dismissed on procedural grounds, as it contains both exhausted and unexhausted claims for relief, and that it likewise fails on the merits. Respondent, however, appears to have responded to the issues raised in Petitioner's stricken memorandum, including claims that were not exhausted below. This Court will address only those grounds for relief identified in Caroon's Petition, which the Court concludes were exhausted. Respondent also argues that Caroon's claims should be dismissed on the merits.

On June 10, 2010, Petitioner filed a motion entitled "Motion to Stay and Abeyance and to Amend Complaint," in which he seeks leave to both amend his habeas petition and to obtain a stay in order to exhaust all unexhausted claims. (Pet'r's Mot. Stay & Amend, Doc. No. 15.)

## II.     DISCUSSION

### A.     Habeas Petition

Petitioner's habeas petition asserts five grounds for relief.  Rather than noting his grounds for relief on the face of the habeas petition form, and in the manner indicated on the form (i.e., "conviction obtained by use of coerced confession," or "denial of right of appeal"), Petitioner attaches a two-page outline enumerating five grounds of relief, with sub-parts.  (See Petition at 7-8.)  With respect to the first two grounds for relief, Petitioner raises the jury instruction and unanimous verdict grounds that were asserted before the Minnesota appellate courts.

As to the three remaining grounds for relief, it is difficult to ascertain the precise nature of Petitioner's claims, particularly given that Petitioner's accompanying memorandum was stricken.  Petitioner may have intended that his memorandum would flesh out his claims, but if so, he abjectly failed to follow this Court's order by filing a rule-compliant memorandum.  The Court is therefore left with the bare bones assertions in the Petition itself, which, in some instances, are almost incomprehensible.  Giving Petitioner the greatest benefit of the doubt, however, the Court finds enough language within these claims, when read alongside his state court *pro se* submissions, to conclude that Caroon is asserting here the same claims that he raised on direct appeal in his *pro se* submissions.[2]   Accordingly, the Court construes Petitioner's additional grounds for relief as follows:  that his conviction was obtained by the prosecution deliberately eliciting statements in violation of his right to counsel (Petition "Ground Three"), that the government offered something of value to the witness who testified against him and also committed a <u>Brady</u> violation (Petition "Ground Four"), and that he was entrapped and his right

---

[2]  If Caroon intended to assert new claims in his Petition, this Court has been unable to identify them.  In addition, any new claims would not be exhausted and would likely be procedurally defaulted.

to counsel was violated (Petition "Ground Five").

## 1. The Fair Presentation Requirement

Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d 199, 200-01 (8th Cir. 1995) (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988))). A federal claim has not been fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, O'Sullivan, 526 U.S. at 845, but the petitioner has the right under state law to raise the claim by any available procedure, 28 U.S.C. § 2254(c). A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." State of Minnesota

v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976).  There are two exceptions to the Knaffla rule: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review.  Townsend v. State of Minnesota, 723 N.W.2d 14, 18 (Minn. 2006).

When a claim is procedurally defaulted in state court, the federal habeas court must determine whether the prisoner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice.  McCall, 114 F.3d at 758 (citing Coleman, 501 U.S. at 750.).  Prejudice need not be considered where a petitioner has failed to fulfill the cause prong of the test.  Id.  The miscarriage of justice exception is only available to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person.  Id.  If the exceptions do not apply, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim.  See Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

### 2. Standard of Review for Claims that Have Been Fairly Presented

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Anti-Terrorism and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The United States Supreme Court explained the meanings of the "contrary to" and

"unreasonable application" clauses in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 412-13. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" <u>Lyons v. Luebbers</u>, 403 F.3d 585, 592 (8th Cir. 2005) (quoting <u>Williams</u>, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." <u>Lee v. Gammon</u>, 222 F.3d 441, 442 (8th Cir. 2000); <u>see</u> 28 U.S.C. § 2254(e)(1). This deference applies to factual determinations made by state trial courts and state appellate courts. <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see</u> <u>Whitehead v. Dormire</u>, 340 F.3d 532, 539 (8th Cir. 2003).

Finally, a petition for habeas corpus relief filed by a person in custody pursuant to the judgment of a state court must be filed within one year of the date on which the conviction becomes final, subject to tolling while the petitioner is pursuing postconviction relief. 28 U.S.C. § 2244(d)(1) and (2). Caroon's conviction became final on March 31, 2009, the date on which the Minnesota Supreme Court denied review, and his habeas petition was filed on March 22,

2010, within the one-year statute of limitations.

### 3. Petitioner's Grounds for Habeas Relief

#### a. Jury Instruction for Conspiracy – the "Overt Act" Requirement

Petitioner argues that the trial court removed the overt act requirement from the conspiracy to commit murder jury instruction, amounting to structural error. (See Petition at 7). Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt, "[n]onetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 436 (2004). Federal habeas relief is available where jury instruction errors "so infected the entire trial that the resulting conviction violates due process," rendering the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 72 (1991). The challenged jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (internal quotation marks and citation omitted). The law presumes that the jury follows the instructions given. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

In Caroon's case, the trial court instructed the jury that in order to find him guilty, it had to find that he conspired with another person to commit murder and that any of the alleged overt acts were done with the purpose of furthering the conspiracy.[3] Caroon, 2009 WL 112859, at *2-

---

[3] The trial court instructed the jury as follows:

> Here are the elements of the crime. Elements of Conspiracy to Commit Murder in the First Degree-Premeditation, are: First, [appellant] conspired with [J.S.] to commit the crime of Murder in the First Degree,-Premeditation. A person conspires with another when he agrees with the other to commit a crime.

3.   In this case, the overt acts alleged included the creation of maps showing the layout of B.K.'s trailer, the alleged creation of the "Dear Dave" letter, and the agreement itself.  Id.   Caroon did not object to the jury instructions at trial, but argued on his direct appeal that the instruction amounted to "structural error," warranting the reversal of his conviction.  Id., at *2.

The Minnesota Court of Appeals addressed this jury instruction argument on the merits. The court rejected Petitioner's claim that the instructions removed the overt act element from the

---

The statutes of Minnesota define the crime of Murder in the First Degree-Premeditation, as follows: The statutes of Minnesota provide that whoever, with premeditation and with intent to effect the death of a person, causes the death of a human being is guilty of a crime.

Second, [appellant] did any of the overt acts alleged and did so with the purpose of furthering the conspiracy. Now, in this case, the overt acts alleged included the creation of maps allegedly showing the location and layout of [B.K.'s] trailer home and/or the alleged creation of the "Dear Dave" letter.

Third, the [appellant] entered the agreement or an overt act took place on September 14, 2006, in St. Louis County.

If you find that each of these elements has been proven beyond a reasonable doubt, the [appellant] is guilty. If you find that any element has not been proven beyond a reasonable doubt, the [appellant] is not guilty.

Now, an overt act is any action taken by one of the conspirators with the intention of furthering the accomplishment of any object of the conspiracy. The act does not itself have to be a criminal act, but it must be done with the purpose of furthering the conspiracy.

It is not necessary that the crime that was the object of the conspiracy actually had been completed or committed. As long as there was an agreement to commit the crime and an overt act was committed with the purpose of furthering the conspiracy, the crime of conspiracy is complete.

Caroon, 2009 WL 112859, at *2-3.

jury's consideration by concluding for the jury that the particular overt acts alleged actually constituted "overt acts" for purposes of the conspiracy offense.  Id. at *3.  The Minnesota Court of Appeals found that the jury was instructed that in order to find Caroon guilty of conspiracy, it must find that he did the following:  (1) conspired with J.S. to commit murder; and (2) did any of the three overt acts alleged and that the acts were done in furtherance of the conspiracy.  Id. (emphasis in original).  Moreover, the trial judge instructed the jury that "an overt act is any action taken by one of the conspirators with the intention of furthering the accomplishment of any object of the conspiracy."  Id.  These instructions, the Minnesota Court of Appeals held, followed the standard Minnesota jury instructions for conspiracy and, when read together, did not omit any element of the offense.  Id.

Petitioner appealed this issue to the Minnesota Supreme Court, which denied review. On appeal to the Minnesota Supreme Court, Petitioner framed this issue as "whether the pattern jury instruction for conspiracy removes an element from the jury's consideration – the requirement for an overt act – and instead, directs a jury finding that any acts alleged by a prosecutor amount to overt acts."  (Pet. for Review to Minn. Sup. Ct. at 2, App. 6 to Resp't's Mem. Supp. Mot. Dismiss.)  While the presentation of this argument, quoted above, does not signal the federal nature of Petitioner's claim, the body of Petitioner's argument cited to a federal constitutional case, In re Winship, 397 U.S. 358, 364 (1970).  The Court therefore concludes that Petitioner fairly presented his claim.

Even if a claim has been fairly presented, as previously discussed, the AEDPA limits habeas review to two types of state court adjudications: (1) decisions that were contrary to, or an unreasonable application of, clearly established federal law, and (2) decisions that were based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

With respect to the first category, Petitioner does not allege in his habeas petition that the legal analysis of the Minnesota state courts (in this case, the Minnesota Court of Appeals directly addressed this issue) was contrary to, or involved an unreasonable application of, federal law. The case cited by Petitioner, In re Winship, stands for the proposition that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  397 U.S. at 364.  Rather than supporting Caroon's argument, the holding of In re Winship is consistent with the Minnesota Court of Appeals' analysis of the jury instructions. Under Minnesota law, the crime of conspiracy requires proof of the following elements: (1) an agreement between two or more people to commit a crime; and (2) an overt act in furtherance of the conspiracy.  Caroon, 2009 WL 112859, at *2 (citing State of Minnesota v. Brown, 732 N.W.2d 625, 628 (Minn. 2007)). The Minnesota Court of Appeals analyzed the jury instructions, finding that they contained the necessary elements of the offense and that the trial court did not conclude for the jury that the particular alleged overt acts were, in fact, overt acts.  Id.

Moreover, as noted, in the specific context of jury instruction errors, federal habeas relief is limited and is available only for errors that utterly "infect" the entire trial, and those alleged errors must be viewed in the entire context of the instructions as a whole and in the context of the trial record.  Estelle, 502 U.S. at 72.  Here, the Minnesota Court of Appeals correctly reviewed the instructions as a whole, along with the record, and concluded that they were sufficient.  Because this outcome is consistent with the protections of the Due Process clause and In re Winship, this Court concludes that Petitioner fails to show that the lower court's decision was contrary to, or an unreasonable application of, clearly established federal law.

With respect to the second category of review under the AEDPA – that the state court

13

adjudication was based on an unreasonable determination of the facts – to the extent that the jury instructions could be said to involve a "factual determination," in that they described three possible overt acts, the instructions were based on the evidence before the court involving the maps, the "Dear Dave" letter and the murder-for-hire agreement. This was a reasonable determination of the facts and was based on the physical evidence and witness testimony before the trial court. Accordingly, the Court finds that Petitioner fails to satisfy the habeas review standard and that his claim for relief on this ground should be denied.

### b.    Unanimous Verdict

Petitioner next contends that his right to a unanimous verdict was violated, arguing that the trial court's jury instructions allowed the jury to find him guilty without agreeing upon which specific overt act was committed.

Petitioner did not expressly state the federal nature of this claim when presenting this issue to the Minnesota Supreme Court, which he framed as follows: "whether a jury must unanimously agree on the particular overt act or acts committed in furtherance of a conspiracy, and be instructed to that effect, and whether the current pattern jury instruction, which allows jurors to find a defendant guilty of conspiracy while disagreeing about the specific overt acts proven, is erroneous." (Pet. for Review to Minn. Sup. Ct. at 2, App. 6 to Resp't's Mem. Supp. Mot. Dismiss.) Petitioner did, however, cite to two federal constitutional cases in his memorandum to the Minnesota Supreme Court, Schad v. Arizona, 501 U.S. 624, 636 (1991), and Richardson v. United States, 526 U.S. 813, 824 (1999), in support of his argument. (Id. at 5.) Thus, Petitioner fairly presented this claim.

The next question before the Court is whether Petitioner has shown that the state court adjudication was contrary to, or an unreasonable application of, clearly established law, or based

on an unreasonable determination of the facts.   <u>See</u> 28 U.S.C. § 2254(d).  As to the two cases

cited by Petitioner in his direct appeal, <u>Schad</u>, 501 U.S. at 631-32, holds that a jury need not

reach unanimous agreement regarding the alternative means by which an element of the charged

crime may be committed, and <u>Richardson</u>, 526 U.S. at 824, holds that a jury in a continuing

criminal enterprise ("CCE") case under 21 U.S.C. § 848  must unanimously agree not only that

the defendant committed some "continuing series of violations," but must agree also about which

specific violations make up that "continuing series."

Because the Minnesota Supreme Court denied review of Caroon's direct appeal, this

Court reviews the decision of the Minnesota Court of Appeals in considering Caroon's claim.

The Minnesota Court of Appeals' decision on this issue is neither contrary to, nor an

unreasonable application of, clearly established federal law, as determined by the Supreme Court

in <u>Schad</u> and <u>Richardson</u>.    The Minnesota Court of Appeals first noted that Caroon failed to

object to the jury instructions at trial, which generally constitutes waiver under Minnesota law.

<u>Caroon</u>, 2009 WL 112859, at *3.  Nevertheless, the Minnesota Court of Appeals reviewed the

instructions for plain error, which is consistent with federal practice in the Eighth Circuit.

<u>See</u> <u>United States v. Jorgenson</u>, 144 F.3d 550, 561 (8th Cir. 1998) (where defendants failed to

object to conspiracy instruction and did not offer a unanimity instruction regarding overt acts,

court reviewed for plain error).

The Minnesota Court of Appeals acknowledged that Minnesota law with respect to juror

unanimity on the overt act element is unclear.  <u>Caroon</u>, 2009 WL 112859, at *5.   The court cited

<u>State of Minnesota v. Stempf</u> for the proposition that "juries must unanimously agree on whether

a defendant committed the act or acts that constitute an element of the crime charged."  <u>Id.</u>, at

*2-3 (citing <u>Stempf</u>, 627 N.W.2d 352, 355 (Minn. Ct. App. 2001)).  In <u>Stempf</u>, the defendant

was charged with one count of possessing methamphetamine, although the prosecution introduced evidence that Stempf possessed methamphetamine at his workplace and in the truck in which he rode to work.  The Minnesota Court of Appeals in <u>Stempf</u> held that the district court's refusal to give a unanimity instruction violated the defendant's right to a unanimous verdict because "[s]ome jurors could have believed [the defendant] possessed the methamphetamine found on the premises while other jurors could have believed [the defendant] possessed the methamphetamine found in the truck."  <u>Stempf</u>, 627 N.W.2d at 358.   In Caroon's appeal, the Minnesota Court of Appeals also noted that while unanimity is required with respect to an element of a crime, it is not required with regard to the alternative ways in which a crime could be committed.  <u>Caroon</u>, 2009 WL 112859, at *4 (citing <u>State of Minnesota v. Begbie</u>, 415 N.W.2d 103, 106 (Minn. Ct. App. 1987)).

Ultimately, the Minnesota Court of Appeals concluded that while the state case law in this area is unclear, even if the district court's jury instruction (which followed the recommended Minnesota jury instruction for conspiracy) was error, it was not plain error, which exists when the court goes against "clear and established law."  <u>Id.</u>, at *5 (citing <u>State of Minnesota v. Ihle</u>, 640 N.W.2d 910, 917) (Minn. 2002)).  Moreover, the court held that even if there was plain error, the alleged error did not affect Caroon's substantial rights, because even with a more specific instruction, "it is not reasonably likely that the verdict would have been affected given the evidence presented at trial and the defense offered by appellant."  <u>Id.</u>, at *5.

 Viewing the lower court's decision against the habeas standard of review, the Minnesota Court of Appeals' decision is neither contrary to, nor an unreasonable application of federal law, as determined by the Supreme Court.   As with Petitioner's first ground for habeas relief which also challenged the jury instructions, this Court affords deference to jury instructions and habeas

relief is quite limited. Viewing the instructions in their entire context, as the Supreme Court requires, Estelle, 502 U.S. at 72, this Court observes that the trial court did provide a general unanimity instruction, stating, "In order for you to return a verdict, whether guilty or not guilty, each juror must agree with the verdict. Your verdict must be unanimous." (Tr. Transcript at 314.)

Petitioner fails to provide Supreme Court authority supporting his argument. Instead, his purported authority actually supports the Minnesota Court of Appeals' decision. With respect to Schad – one of the two federal cases cited by Petitioner in support of his petition for review to the Minnesota Supreme Court – the Supreme Court held that a jury need not reach unanimous agreement about the alternative ways in which an element of the charged crime may be committed. This holding is consistent with the Minnesota Court of Appeals' opinion, which cites the Begbie state court decision, which holds that while unanimity is required with respect to an element of a crime, it is not required with regard to the alternative ways in which a crime can be committed. Moreover, Richardson, also cited by Petitioner in his petition for review to the Minnesota Supreme Court, can be read to lend support to the Minnesota Court of Appeals' decision, in that the Supreme Court in Richardson found:

> If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.

526 U.S. at 818. Here, while the Supreme Court held that the CCE offense was of the latter type for which each "violation" constitutes a separate element, Richardson's reasoning could be read to support the conclusion that Minnesota's conspiracy statute, Minn. Stat. § 609.175, requiring the element of "some overt act," is a statute creating a single overt act element, 'in respect to

which individual violations are but the means.'  In any event, <u>Richardson</u> certainly does not

stand for the proposition that juror unanimity is required with respect to the particular overt acts

alleged in a conspiracy charge.

Petitioner does not meet the standard required under the AEDPA , as he fails to point to

Supreme Court authority demonstrating that the state court adjudications were either contrary to,

or unreasonable applications of, clearly established federal law.  Caroon also fails to demonstrate

an unreasonable factual determination with respect to this claim  Accordingly, the Court

recommends the denial of this ground of relief.

> **c.      Violation of Right to Counsel/Deliberate Elicitation of Statements**

Ground Three of Caroon's habeas petition provides as follows:

> Is it ok for the Government to induce the Petitioner into Conversation? U.S.C.A. 5th, 6th, and 14th.

> A.      For the Government to deliberately elicit incriminating statements from the Petitioner without counsel?

> B.      Does the right to counsel attach once the Petitioner is indicted, with the same or similar crime?

(Petition at 7-8.)

To a great extent, the claims presented in Petitioner's Grounds Three through Five

overlap, as he raises a mix of issues relating to entrapment and deliberate elicitation of

incriminating statements in all three claims.  The Court's analysis with respect to these three

claims therefore necessarily overlaps as well.  As to whether Petitioner fairly presented his third

claim to the Minnesota Supreme Court, Caroon's *pro se* submissions to the Minnesota Court of

Appeals and the Minnesota Supreme Court (as noted earlier, Caroon filed the same *pro se* brief

to both courts) focused throughout on his claims of entrapment, denial of right to counsel and

Brady violations, all in connection with the jailhouse informant, J.S. In his *pro se* submissions to the state courts, Caroon argued that due process of the law requires that a coerced statement be excluded from the jury's consideration, citing Crane v. Kentucky, 476 U.S. 683 (1986), and Leyra v. Denno, 347 U.S. 556 (1954), and that inducing a defendant to commit a crime is a due process violation, citing Mapp v. Ohio, 367 U.S. 643 (1961), and Massiah v. United States, 377 U.S. 201 (1964). (See Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App. at 8, 11, App. 2 to Resp't's Mem. Supp. Mot. Dismiss.) Liberally construing his *pro se* submissions, this Court finds that Ground Three of Caroon's habeas petition was fairly presented as a federal ground for relief.

The manner in which Petitioner presents this issue as a federal habeas claim, however, is severely lacking. First, because Petitioner failed to re-file a compliant memorandum in support of his habeas petition, he provides no support for this ground of relief to the Court, which is left with the skeletal framework of the Petition itself. As to the way in which Caroon presents Ground Three in this Petition, he cites to no legal authority whatsoever. While the Minnesota Court of Appeals acknowledged and considered the issues raised in Caroon's *pro se* submission, it concluded that they were meritless and declined to analyze the issues. Caroon, 2009 WL 112859, at *5. In this vacuum, it is difficult for this Court to analyze whether the state courts' decisions were contrary to, or an unreasonable application of, federal law without the benefit of the state courts' analysis and without any citations to legal authority provided by Petitioner. However, the Minnesota Court of Appeals did conclude that Caroon's *pro se* arguments were without merit and it is Caroon's burden to point to Supreme Court authority to the contrary. Lacking any authority provided by Petitioner to his Court, the Court therefore turns to Petitioner's *pro se* submissions to the state appellate courts, in which he cites the Supreme Court

authority noted above.

Both Crane, 476 U.S. 683, and Leyra, 347 U.S. 556, lend no support to Petitioner's third ground for relief, as they address the voluntariness of confession obtained through interrogation. There is no interrogation at issue here. Similarly, Mapp v. Ohio, 367 U.S. 643, is inapposite, as it concerns the inadmissibility of evidence obtained by unconstitutional search and seizure. The record here contains no evidence of search and seizure.

In Massiah, cited by Petitioner in his *pro se* state court submissions, the Supreme Court considered a constitutional challenge where the defendant made incriminating statements to a co-defendant, after his indictment and his release on bail, and in the absence of defendant's retained counsel. 377 U.S. at 202-03. A government agent overheard these statements on a radio transmitter, without the defendant's knowledge that his co-defendant had agreed to cooperate with the government and had permitted the installation of a radio transmitter in his car. Id. The Supreme Court held that the right to counsel attaches from the time of arraignment through trial and that the statement obtained from Massiah therefore violated his rights under the Fifth and Sixth Amendments, as he had been arraigned and had obtained counsel at the time the incriminating statement was taken. Id. at 205.

Massiah is inapposite to the situation here. While in custody on unrelated charges, Caroon discussed the murder-for-hire plan with another jail inmate. The inmate informed authorities and agreed to wear an undercover wire so that the authorities could investigate his allegations. See Caroon, 2009 WL 112859, at *1. The information obtained through the wire recording was investigative. No right to counsel attached, as Caroon had not been charged with the crime that law enforcement was still investigating. The Supreme Court has held that the Sixth Amendment right to counsel is offense-specific, attaching only to the charged offense and

there is no exception for uncharged crimes that are "factually related" to a charged offense. Texas v. Cobb, 532 U.S. 162, 168-69 (2001). In Cobb, the defendant had been indicted for the burglary of a residence, but not for the murder of the home's occupants. Id. at 162. While in custody, the defendant confessed to his father that he had committed the murders, and after his father informed the police, the defendant confessed, waiving his Miranda rights, although he had obtained counsel for purposes of the burglary offense. In determining whether an offense is the same offense for purposes of the Sixth Amendment, the Supreme Court in Cobb applied the test set forth for double jeopardy purposes in Blockburger v. United States, 284 U.S. 299 (1932). Blockburger held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. In Cobb, the Supreme Court found no violation of Cobb's right to counsel, concluding that the burglary and murder offenses constituted two separate offenses, and were codified as such under Texas law. 532 U.S. at 173. Under Minnesota law, a felony violation of an order for protection is not the same offense as conspiracy to commit first-degree murder. Cf. Minn. Stat. § 518B.01, Subd. 14(d) (felony violation of an order for protection) with Minn. Stat. § 609.185(a)(1) (first-degree murder). Accordingly, there was no Sixth Amendment violation.

For all of these reasons, the Court finds that Caroon fails to show that the decisions of the state appellate courts were contrary to, or an unreasonable application of federal law. Moreover, Petitioner does not point to any authority for the proposition that his conviction resulted in an unreasonable determination of the facts in light of the evidence presented. The Court therefore recommends the denial of this ground for relief.

**d.    Brady Violation/Something of Value Offered to Witness**

In his fourth ground for habeas relief, Petitioner alleges a "Brady-Henry" violation, and makes reference to "201(c)(2)," which the Court construes to refer to 18 U.S.C. § 201(c)(2):

> Does 201(c)(2) require that Congress preceived [sic] to be wrong, and operates to prevent fraud upon the federal court's [sic] in form of inherently unreliable testimony, than the prosecution of 201(c)(2) must apply to the Government as well as Petitioner?  U.S.C.A. 6th, 8th, and 14th.
>
> A.    Is there a Brady-Henry violation?
>
> B.    Is automatic reversal required when the State's witness deliberately gives false testimony about consideration given?

(Petition at 8.)

As to the statutory citation, 18 U.S.C. § 201(c)(2) criminalizes the bribery of public officials and witnesses.   The Court is unfamiliar with what Petitioner refers to as a combination "Brady-Henry" violation, but the Court assumes that he refers to both Brady v. Maryland, 373 U.S. 83 (1963), which requires the government to produce material, exculpatory evidence to a defendant, and United States v. Henry, 447 U.S. 264 (1980), which addresses the admissibility of a defendant's statements made to an informant.

The Court first examines whether Petitioner fairly presented this claim to the Minnesota Supreme Court.  In Petitioner's *pro se* submissions to both the Minnesota Court of Appeals and the Minnesota Supreme Court, he cited to Brady, Henry and "201(c)(2)."  (See Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App., App. 2 to Resp't's Mem. Supp. Mot. Dismiss.)   The Court therefore finds that Petitioner has "fairly presented" this claim.

Next, the Court analyzes whether Petitioner has shown that the state courts' adjudications were contrary to, or unreasonable applications of, clearly established federal law.  First, as to 18 U.S.C. § 201(c)(2), this is a federal criminal statute and not an independent source of a

constitutional right.  Caroon apparently believes that the prosecution rewarded J.S., the jailhouse informant, for his testimony, and that 18 U.S.C. § 201(c)(2) either provides Caroon with a basis for relief or supports his claims.  He is incorrect on both counts.  Not only does the statute provide no basis for relief to Caroon, but his factual argument runs counter to the record, which clearly indicates that law enforcement "refus[ed] to make any specific promises regarding a possible reduction of the charges against J.S."  Caroon, 2009 WL 112859, at *1.  Caroon cites to no evidence in the record that supports his assertion to the contrary.

As to a Brady violation, Caroon contends that the prosecution failed to disclose any deals or promises made to J.S. in exchange for his testimony.  (Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App. at 9, App. 2 to Resp't's Mem. Supp. Mot. Dismiss.)   Again, nothing in the record supports this theory or this argument, nor does Petitioner cite to any evidence, therefore Brady is inapplicable to this ground of relief.

Regarding Petitioner's ground for relief based on Henry, that case involved an indicted, pre-trial detainee who divulged inculpatory information to a paid, confidential jailhouse informant.  447 U.S. at 266.  Like Massiah, discussed *supra*, Henry is inapplicable, as Petitioner was not indicted for the conspiracy to commit murder offense at the time of the wire-transmitted statements to J.S.

In sum, the Supreme Court constitutional cases cited by Caroon do not demonstrate that the Minnesota state court adjudications were contrary to, or unreasonable applications of, clearly established federal law.  Additionally, Petitioner has not shown that the state court adjudications were based on an unreasonable determination of the facts in light of the evidence presented.  To the contrary, the state court adjudications were consistent with the evidence presented to the trial court.  In his *pro se* submissions, Caroon argued an alternative version of facts – that law

enforcement made a secret deal with J.S. and failed to disclose it, that it was actually J.S. who wanted to kill Caroon's girlfriend, and that J.S. and the police colluded to "set up" Caroon. (See Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App. at 5-6, App. 2 to Resp't's Mem. Supp. Mot. Dismiss.)  This view of events is wholly unsupported and is directly contradicted by the record.  For all of these reasons, the Court recommends the denial of this ground for relief.

### e.    Entrapment/Violation of Right to Counsel

In his final ground for relief, Petitioner raises the combined issues of entrapment and a Massiah violation:

> Is there a Massiah violation when the State does more than merely engage in general conversation?  Can this statement be used?
>
> A.    Is it clearly established as well that the Due Process standard defense, the Due Process defense [sic] bars conviction of even a predosposed [sic] defendant if the conduct of the Government in participating in or inducing the commission of the crime is sufficiently outrageous?
>
> B.    Is there "creative activity of it's [sic] 'own officials' or 'born in the minds of Government officials' or those private citizens acting under Government directions?
>
> C.    Is it entrapment when the Government creates and induces the conversation of defendant?

(Petition at 8.)

As to whether Petitioner has shown that the state court adjudications were contrary to, or an unreasonable application of, clearly established federal law, he fails to meet the standard.  No evidence in the record supports Caroon's allegation of entrapment.  Rather, the record supports the conclusion that Caroon initiated the murder-for-hire discussion with J.S., who subsequently spoke to law enforcement officers.

In addition, Caroon fails to point to any Supreme Court authority that supports his

entrapment claim.  In his *pro se* state court submissions, Caroon cites to one Supreme Court decision on the issue of entrapment, <u>Jacobson v. United States</u>, 503 U.S. 540 (1992).[4]  (<u>See</u> Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App. at 6-7, App. 2 to Resp't's Mem. Supp. Mot. Dismiss.)   In <u>Jacobson</u>, the defendant had, at a time in the past when federal law permitted such conduct, ordered and received from a bookstore magazines containing images of child pornography.  503 U.S. at 540.   After such conduct became criminalized and the defendant's name was found on the bookstore's mailing list, a law enforcement agency sent the defendant multiple mailings purporting to be from organizations asserting individual rights, and eventually solicited Jacobson to order child pornography, which he did.  The defendant was charged, pleaded an entrapment defense and was convicted.  His conviction was upheld on appeal, but was reversed on certiorari to the Supreme Court, which held, "Where the Government has induced an individual to break the law and the defense of entrapment is at issue . . ., the prosecution must prove beyond reasonable doubt that the defendant was predisposed to commit the criminal act prior to being approached by Government agents."  <u>Id.</u> at 549 (citing <u>United States v. Whoie</u>, 925 F.2d 1481 (D.C. Cir. 1991)).

Jacobson is clearly distinguishable from the instant facts.  Here, the record reveals that

---

[4]  Caroon also cites to <u>Rogers v. Richmond</u>, 365 U.S. 534 (1961), generally on the issue of entrapment or coercion, in his *pro se* state court submissions.  (<u>See</u> Appellant's *Pro Se* Supp'l Br. to Minn. Ct. App. at 8, App. 2 to Resp't's Mem. Supp. Mot. Dismiss.)  In <u>Rogers</u>, the Supreme Court considered the admissibility of a confession, holding that the test for the voluntariness of confessions is whether the state officials' behavior has overborne the defendant's will to resist, bringing about confessions not freely self-determined.  <u>Id.</u> at 544-45.  As <u>Rogers</u> concerns issues of coercion, not entrapment, the Court finds that it is both legally and factually inapplicable to Caroon's asserted grounds for relief.  In any event, nothing in the record suggests that Caroon was either coerced or entrapped into communicating with J.S.

the murder-for-hire plan originated with Caroon, who was predisposed to commit the criminal act prior to J.S.'s involvement with law enforcement.   Moreover, Caroon failed to raise an entrapment defense at trial.  (See State of Minnesota v. Caroon, Resp't's Mem. to Minn. Ct. App. at 21, App. 3 to Resp't's Mem. Supp. Mot. Dismiss.)  Caroon's entrapment claim is without merit.

Regarding Caroon's Massiah claim in Ground Five of his Petition, as discussed *supra* with respect to Ground Three of the Petition, this Court rejects the applicability of Massiah to Caroon's case.   Additionally, Petitioner fails to show that the state court adjudications involved an unreasonable determination of the facts with respect to this ground for relief.

For all of these reasons, the Court recommends the denial of this ground for relief.  As the Court has recommended that all of Petitioner's ground for relief be denied, the Court accordingly recommends the dismissal of Caroon's Petition with prejudice.

### B.      Motion for Reconsideration

Petitioner moves to "have any and all evidence reconsidered by this Honorable Court." (Pet'r's Mot. Reconsider, Doc. No. 11.)  This motion is captioned with Caroon's state court case caption, i.e., State of Minnesota v. David Allen Caroon, yet it bears the hand-written civil case file number assigned by this Court.  It is not clear whether Petitioner intended to file this motion in state or federal court.  This motion cannot be construed as Petitioner's revised memorandum in support of his habeas petition – nor does that appear to have been Caroon's intention –  as the motion contains no supporting legal authority, is not limited to the issues raised in the Petition (as it purportedly seeks to have "any and all evidence" reconsidered), nor is it in the form of a memorandum.

To the extent that Petitioner's habeas petition raises for this Court's reconsideration those

issues challenged before the Minnesota state courts, the Minnesota Court of Appeals reconsidered issues ruled on by the trial court, the Minnesota Supreme Court had the opportunity to reconsider the issues ruled upon by the Minnesota Court of Appeals, and this Court has now reviewed the very same issues. The Court therefore finds that Petitioner's evidence and motions have been duly reconsidered and recommends that this motion be denied as moot.

### C. Motion to Stay and to Amend the Complaint

Petitioner moves "for a stay and abeyance to exhaust all unexhausted claims." (Pet'r's Mot. Stay & Amend, Doc. No. 15.) He cites limited access to the law library and a recent prison transfer and states, "I would hope that I could get that chance to amend the petition." (Id.)

First, as to the request for a stay in order to exhaust all unexhausted claims, it appears to the Court that all of the claims identified in the Petition have been exhausted, as the grounds for relief in Caroon's habeas petition were appealed to the Minnesota Court of Appeals, then to the Minnesota Supreme Court, which denied review. Accordingly, because there are no unexhausted claims, the Court recommends that Petitioner's request for a stay be denied as moot.

Second, as to Petitioner's request to amend his Petition, he utterly fails to specify what he wishes to add or amend. Perhaps Caroon contemplates adding claims related to his request for a stay, but the Court has concluded that the Petition contains no unexhausted claims. The Court therefore recommends that this portion of his Motion be denied.

### D. Certificate of Appealability

A state prisoner may not appeal the denial of a 28 U.S.C. § 2254 habeas petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). To obtain a COA a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must

demonstrate that reasonable jurists would find the district courts assessment of the constitutional claims debatable or wrong." <u>Slack v. Daniel</u>, 529 U.S. 473, 484 (2000).

Here, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants appellate review. It is there recommended that Petitioner not be granted a COA in this matter.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.    Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**; and

2.    This action be **DISMISSED WITH PREJUDICE**;

3.    That Petitioner not be granted a Certificate Of Appealability;

4.    Petitioner's Motion for Reconsideration (Doc. No. 11) be **DENIED AS MOOT**;

5.    Respondent's Motion to Dismiss (Doc. No. 12) be **GRANTED**; and

6.    Petitioner's Motion to Stay and Abeyance and to Amend Complaint (Doc. No. 15) be **DENIED AS MOOT**, and **DENIED**, consistent with this Report & Recommendation.


Dated: October 15, 2010

<span style="margin-left:40%;"><u>s/Susan Richard Nelson</u></span>

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **November 1, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.